# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

JENNIFER WHALEY,

       Plaintiff,

v.                            Case No: 2:17-cv-324-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

---

## REPORT AND RECOMMENDATION[1]

Plaintiff Jennifer Whaley, on behalf of M.H.M., a minor, seeks judicial review of the denial of her child's claim for supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 21)[2] and the applicable law. For the reasons discussed herein, the Court recommends the decision of the

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Commissioner be reversed and this matter remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    Issues on Appeal[3]

Plaintiff raises three issues on appeal: (1) whether the administrative law judge ("ALJ") properly considered the evidence from M.H.M's teacher, Kellee Anderson; (2) whether the ALJ properly weighed the opinion of Christina Needham, Ed.D.; and (3) whether the ALJ properly weighed the opinion of Rebecca Marazon, MS, CAS.

## II.    Summary of the ALJ's Decision

On March 8, 2013, Plaintiff filed an application for SSI on behalf of her minor child, M.H.M, born on May 11, 2004, alleging disability that began on June 1, 2011 due to Attention Deficit Hyperactivity Disorder ("ADHD").   Tr. 103, 111.   Plaintiff's claim was denied initially on August 12, 2013, and upon reconsideration on November 22, 2013.   Tr. 111, 117, 140, 149.   On January 13, 2014, Plaintiff requested a hearing before an ALJ.   Tr. 156.   ALJ Tammi Whitaker held a hearing on January 19, 2016, and on March 28, 2016, she found M.H.M. was not disabled through the date of the decision.   Tr. 15–44, 51–101.

At step one, the ALJ found M.H.M. has not engaged in substantial gainful activity at any time relevant to her decision.   Tr. 18.   Next, at step two, the ALJ

---

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

found M.H.M. has the following severe impairments: ADHD, oppositional defiance disorder, adjustment disorder with mixed emotion, adjustment disorder affecting mood and behavior, mood disorder, autism spectrum disorder, and depressive disorder due to autism.   Tr. 18.   At step three, the ALJ found M.H.M. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 21.   The ALJ also determined M.H.M. does not have an impairment or combination of impairments that functionally equals the listings.   Tr. 25.   Thus, the ALJ concluded Plaintiff was not disabled.   Tr. 44.   The Appeals Council denied Plaintiff's request for review on April 14, 2017, and Plaintiff subsequently filed a Complaint with this Court.   Tr. 1–4; Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

An individual under the age of eighteen is disabled for purposes of seeking child SSI benefits when he has a medically determinable physical or mental impairment which results in marked and severe functional limitations and can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(C)(i).   The Commissioner has established a three-step sequential analysis for evaluating a claim of disability for a child, which requires the child claimant to show that: (1) he is not engaging in substantial gainful activity; (2) he has an impairment or combination of impairments that is severe; and (3) his impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment.   20 C.F.R. § 416.924(a).

At step three, the Commissioner determines whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. If not, the Commissioner decides whether it results in limitations that functionally equal the listings. 20 C.F.R. § 416.926a(a). In determining whether an impairment or combination of impairments functionally equals the listings, the Commissioner assesses the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked limitation" in a domain results when the child's impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme limitation" in a domain results when the child's impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by

substantial evidence.   42 U.S.C. § 405(g).[4]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

---

[4] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.   *See e.g.*, 20 C.F.R. §§ 416.920a, 416.920c, 416.927 (effective March 27, 2017); SSR 16-3p.   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

## IV.   Discussion

### a.   *Whether the ALJ properly considered the evidence from M.H.M.'s teacher, Kellee Anderson*

Kellee Anderson completed a Social Security Administration Teacher Questionnaire form on September 30, 2013.  Tr. 497–504.  The form indicated it should be completed by the person(s) most familiar with M.H.M's overall functioning.  Tr. 497.  At the time she completed the questionnaire, Ms. Anderson was teaching M.H.M.'s fourth-grade class and had known him for eight weeks, seeing him weekdays for seven hours.  *Id.*  Ms. Anderson was asked to rate M.H.M.'s functioning in each domain used in the six-domain disability evaluation and was asked to rate his functioning in five of the six domains, using a five-point scale indicating the following as compared to the functioning of same-aged children who do not have impairments:  No problem, slight problem, obvious problem, serious problem, or very serious problem.  Tr. 498–503.  Ms. Anderson checked the boxes indicating M.H.M. had no problems in the domains of acquiring and using information, interacting and relating with others, or moving and manipulating objections.  Tr. 498, 500–501.  As to attending and completing tasks, Ms. Anderson rated M.H.M.'s ability to perform the following functions a two out of five, indicating a slight problem: paying attention when spoken to directly, focusing long enough to finish assigned activities, carrying out multi-step instructions, organizing his own things or school materials, completing work accurately without careless mistakes, and working at a reasonable pace/finish on time.  Tr. 499.  She further noted,

> [M.H.M.] has bad days just like his peers.   When it is a topic he likes he
> will finish it quickly.   When he does not like the task it may take h[im]
> extra time.   He can work independen[t]ly as well as in a group.   He is
> good at leading the group to get tasks he likes accomplished.   There are
> times when he gets frustrated and needs some refocusing.

*Id.*  Regarding caring for himself, Ms. Anderson rated the following functions a three out of five, indicating an obvious problem:   handling frustration appropriately, identifying and appropriately asserting emotional needs, responding to changes in his own mood (calming self), using appropriate coping skills to meet daily demands of the school environment, and knowing when to ask for help.   Tr. 502.   She further commented, M.H.M. "has some anger issues.   He is very hard on himself and does not like to fail.   He can get frustrated but can be talked down if caught early enough."

*Id.*  Although Ms. Anderson did not know what medication M.H.M. was prescribed, she indicated he takes medication on a regular basis and commented he is "more focused" when he takes it.   Tr. 503.

Ms. Anderson also wrote a letter dated December 16, 2013 addressed "To Whom It May Concern."   Tr. 373.   The first sentence of the letter stated she was "writing this letter to document the behavior of [M.H.M.] in his 4th grade classroom." Ms. Anderson then described her observations of M.H.M.:

> In the morning when [M.H.M.] comes in, around 8:40 am, he is very
> happy and unfocused.   It takes him about 20-30 minutes to get settled
> down. A little after 9am Mason becomes very somber and sad. He can
> focus on the task he has to do as long as he does not need help. He is
> very fixated on doing it right without help and gets frustrated when he
> does need help. If he is reprimanded or redirected sometimes he will fall
> on the floor in the fetal position. It takes some coaching, but I can
> usually get him off the floor. Sometimes it does take time though. This
> lasts until about 10:30 when we usually have a snack time. [M.H.M.]
> will not eat anything unless I stand over him and watch him do it.   Mom

has provided protein shakes and this seems to be okay with [M.H.M.] on most days. On the days that he does not have a snack his inability to control his actions and focus become much worse at a much more rapid pace.

At around 11:30 his focus become [sic] very inattentive and his work is no longer being complete. He is quick to be aggravated and has become aggressive with other students in the class. If there is an incident he is immediately remorseful and cries. When speaking with him about it he complains that he doesn't know why he does it. He seems very sorry for his actions or outbursts.

At 12:45 we eat lunch and I usually have to remind him to eat. I am not in there so I am not sure if he does or not. After lunch he has become very noncompliant about doing work. He complains that it is too hard or that he just can't do it and will not try, even with one on one attention. At this point in the day he is very sad and sullen.

At recess he has become withdrawn from his friends and some days I have to convince him to come inside. He is upset at dismissal if he has to wait too long and refuses to sit with others at parent pickup.

*Id.*   The ALJ summarized the contents of the letter when analyzing whether M.H.M.'s impairments functionally equaled a listing. Tr. 25, 32.   In determining M.H.M.'s ability to attend and complete tasks, the ALJ cited Ms. Anderson's letter as well as her earlier questionnaire, concluding that M.H.M. "has less than marked limitation in this area." Tr. 39–40.   The ALJ reasoned:

Upon physical examination, [M.H.M.] was documented to have the ability to remain seated and focus on an activity.   After receiving his medication, his current teacher stated he can focus on the task he has to do as long as he does not need help.   [M.H.M.'s] teacher noted that he has a very difficult time focusing when he forgets to take his medication.   She stated that he appeared to be capable of completing his work, but is unable to focus long enough to complete his assignments.   She documented he can work independently as well as in a group, and he is good at leading the group to get a task accomplished. She noted there are times he gets frustrated and needs refocusing. During testing with Dr. Visser, [M.H.M.] was observed to have concentrated, and did not have problems with persistence.   Dr. Carver

> testified that [M.H.M.] was struggling in math, but does ok[ay] with language.  His testing scores are also consistent with this conclusion.  [M.H.M.] and [his] grandmother testified that [he] can play video games and plays with Legos.  Additionally, [M.H.M.'s] mother documented [he] can work on arts and crafts projects.  [M.H.M.] has less than marked limitation in this domain.

Tr. 40 (internal citations omitted).

Plaintiff argues that the ALJ failed to sufficiently consider Ms. Anderson's statements because she found M.H.M had obvious problems in four different areas of his ability to care for himself, yet the ALJ found less than marked limitations in that domain. Doc. 21 at 15.  Plaintiff argues the December letter from Ms. Anderson suggests further limitations because it reflects Plaintiff is not eating. *Id.* at 15–17.  Plaintiff further argues the December letter supports additional social limitations (interacting and relating with others) because he falls on the floor in the fetal position and becomes withdrawn from his friends. *Id.* at 17.  Plaintiff suggests Ms. Anderson's statements also support greater and marked limitations in the domain of acquiring and using information. *Id.*  Plaintiff concludes the ALJ failed to weigh the December letter despite its significant probative value. *Id.*

The Commissioner responds that Ms. Anderson's opinions on issues reserved to the Commissioner—namely, administrative findings dispositive of a case—are not entitled to any weight or special significance. *Id.* at 18.  She further argues Ms. Anderson is not a medical source but considered an "other source" under the regulations, and her opinions and/or statements are insufficient to establish a finding of disability. *Id.* (citing 20 C.F.R. § 416.02, 416.913(a)).  The Commissioner also argues the ALJ generally is not required to articulate specific reasons for discounting

opinions from "other sources." *Id.*   Finally, the Commissioner argues Ms. Anderson's statements are duplicative of Plaintiff's subjective complaints such that the ALJ's rejection of Plaintiff's allegations is an implicit rejection of her statements. *Id.* at 20.

"The regulations require the ALJ to evaluate every opinion of record and to explain the weight assigned to opinions from an 'acceptable medical source.'" *McGruder v. Astrue*, No. 1:11-cv-0468-JSA, 2012 WL 5817938, *6 (N.D. Ga. Nov. 16, 2012) (citing 20 C.F.R. §§ 404.1513(d), 416.927(b), (d)).   While the Court recognizes that Ms. Anderson is not an "acceptable medical source," SSR 06-03p requires that the ALJ consider evidence from non-medical sources such as teachers, school counselors, and social workers.   SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). "Although the Eleventh Circuit has held that the ALJ need not specifically refer to every piece of evidence in the record, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), the ALJ must explain the weight afforded to 'obviously probative exhibits.'" *McGruder*, 2012 WL 5817938, at *7 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   Moreover, "SSR 06-03p further clarifies that this requirement that an ALJ state the weight given to 'obviously probative exhibits' should generally apply to evidence from nonmedical sources such as teachers." *Id.* Information from other sources "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2.

In *McGruder*, the plaintiff, on behalf of the minor claimant, argued that the ALJ erred when he failed to apply the proper legal standards when evaluating the claimant's teacher questionnaires. *McGruder*, 2012 WL 5817938, at *6–8. The court agreed and reversed and remanded the decision back to the Commissioner. *Id.* at *6–11. The court noted that although the ALJ is not required to apply to "other sources" the six factors used for evaluating medical opinions from "acceptable medical sources," the factors represent principles that can apply to the consideration of all opinions, including school records. *Id.* at *7 (citing 20 C.F.R. §§ 404.1527(d); 416.927(d)). These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence in support of an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. *Id.* (citing SSR 06-03p, 2006 WL 2329939).

The court in *McGruder* found that the ALJ's opinion was not sufficiently detailed for the court to determine whether the ALJ evaluated the teacher questionnaires in accordance with the factors set forth in SSR 06-03p. *Id.* at *6. The ALJ did not discuss the serious limitations reported by the teachers and the extensive contacts the claimant had with the teacher over the years. *Id.* at *8. The court found that remand was required because "the ALJ's minimal discussion of the teacher questionnaires did not sufficiently explain the weight he placed on those

important pieces of evidence, how he considered them, and how they fit into his ultimate determination." *Id.*   The court found that the ALJ summarily addressed the questionnaires by noting that they reveal "some limitation." *Id.*   Thus, the court found that it was impossible to determine whether the ALJ's decision was support by substantial evidence and remanded the case back to the Commissioner. *Id.* at 11.

Unlike *McGruder*, the ALJ in this case discussed Ms. Anderson's questionnaire and the comments therein.   Tr. 22–25, 32, 37–38, 40–43.   She noted Ms. Anderson indicated M.H.M. was "on grade" in reading, math, and language.   Tr. 37 (citing Tr. 497).   The ALJ specifically recited Ms. Anderson's findings in each domain from the questionnaire she completed.   Tr. 37–38.   As to the attending and completing tasks domain, the ALJ noted that Ms. Anderson documented "a slight problem paying attention when spoken to directly; focusing long enough to finish assigned activity or task; carrying out multi-step instructions; organizing own things or school materials; completing class/homework assignments; completing work accurately without careless mistakes; and working at reasonable pace/finishing on time."   Tr. 38 (citing Tr. 498).   The ALJ further cited Ms. Anderson's rating reflecting that M.H.M. has obvious problems in the domain of caring for himself, namely: "handling frustration appropriately; identifying and appropriately asserting emotional needs; responding appropriately to changes in own mood; using appropriate coping skills to meet daily demands; and knowing when to ask for help."   *Id.* (citing Tr. 502).

The ALJ also explicitly evaluated the additional statements contained in Ms. Anderson's questionnaire:

> The questionnaire includes statements regarding [M.H.M.'s] alleged functional limitations. These are generally consistent with [M.H.M.'s] statements. The undersigned has considered these statements as those of "other sources" (20 CFR [§] 416.913(a) and SSR 06-03p. The undersigned gives partial weight to these statements. No marked limitations are supported by Ms. Anderson's assessment. She identified [M.H.M.'s] improvement with medication, which is consistent with the evidence of record. However, [M.H.M.'s] teacher does not have the degrees of medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms.

Tr. 38. The ALJ further incorporated the statements as appropriate into her analysis of the domains. Tr. 40–43. In the absence of Ms. Anderson's December 2013 letter, the Court may have recommended that the ALJ properly weighed the evidence from Ms. Anderson. The ALJ, however, did not evaluate Ms. Anderson's December letter as explicitly as she did the questionnaire, and the Court recommends this was error.

Although the ALJ summarized the contents of the letter and cited it in her findings about M.H.M's ability to attend and complete tasks, she did not resolve the conflicts between the questionnaire and the letter. Tr. 32, 39–40; *see Ellington ex rel. C.K.S. v. Astrue*, 927 F. Supp. 2d 1257, 1271 (M.D. Ala. 2013). As Plaintiff argues, the December letter may support at least a marked limitation in M.H.M.'s ability to care for himself because Ms. Anderson notes that she has to remind him to eat his lunch and stand over him to get him to eat. Doc. 21 at 16 (citing Tr. 373). The ALJ explained her finding that he had a less than marked limitation in the ability to care for himself:

> [M.H.M.'s] mother stated he could use a zipper by himself; take a bath or shower without help; brush his teeth; comb or brush his hair; wash

his hair by himself; eat by [him]self using a knife, fork, and spoon; obey safety rules, such as looking for cars before crossing the street; and get to school on time. [M.H.M.'s] mother documented he could not choose clothes by himself; pick up and put away toys; hang up clothes; help around the house; do what he is told most of the time; or accept criticism or correction. [M.H.M.'s] grandmother testified she must dress him, and put him in the shower. [M.H.M.] was documented to have an obvious problem handling frustration appropriately; identifying and appropriately asserting emotional needs; responding appropriately to changes in own mood; using appropriate coping skills to meet daily demands; and knowing when to ask for help. On October 22, 2015, [M.H.M.] was documented to no longer have "anger fits" since starting Depakote. Dr. Carver testified [M.H.M.'s] oppositional behavior, not a cognitive limitation, is the cause of his refusal to participate in self-care activities. Further, Dr. Carver testified that this defiance is occurring most of the time at home, rather than at school. [M.H.M.] has less than marked limitations in this domain.

Tr. 43. Because the ALJ failed to address the statements in Ms. Anderson's December letter, the Court recommends it cannot determine whether the ALJ's finding that M.H.M. has less than marked limitations in caring for himself is supported by substantial evidence.

As noted above, a "marked limitation" in a domain results when the child's impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). In determining whether a child has a marked or extreme limitation in a domain, the ALJ considers how the child performs in a supportive setting and with medication. 20 C.F.R. § 416.926a(a). The regulations explain that school-age children in this domain should be independent in day-to-day activities, but may need to be reminded to do them routinely, should begin recognizing their strengths and weaknesses in different activities, should be able to identify circumstances causing good and bad feelings

about themselves, should begin developing a sense of right and wrong and of acceptable and unacceptable behavior, should demonstrate consistent control over their behavior, and should avoid behaviors that are unsafe or otherwise not good.  20 C.F.R. § 416.926a(k).

A "less than marked" limitation in this domain is consistent with Ms. Anderson's findings in her questionnaire regarding obvious, but less than serious, problems with the areas listed.   Tr. 498; *see Goree v. Colvin*, No. CV-11-S-2573-S, 2013 WL 4056218, at *5 (N.D. Ala. Aug. 12, 2013) ("Most of these limitations were indicated to be "obvious problems," and thus, were less than serious/marked."); *see also Beavers v. Soc. Sec. Admin.*, 601 F. App'x 818, 822–23 (11th Cir. 2015).   It is not consistent, however, with Ms. Anderson's December 2013 letter stating she must stand over M.H.M. to get him to eat.   Tr. 373.   Indeed, the December letter directly contradicts Ms. Anderson's finding in the questionnaire that he had no problem caring for his physical needs such as dressing and eating.   Tr. 502.   The requirement that someone stand over M.H.M. to get him to eat suggests that his ability to care for himself may have been marked.   *See Ellington ex rel. C.K.S.*, 927 F. Supp. 2d at 1271 ("Because a professional and/or a parent must assist C.K.S. in the classroom at all times in order for the him to remain focused on a lesson, it is logical to conclude that C.K.S.'s ability to acquire and use information on his own is at least markedly to severely limited").   Similarly, M.H.M.'s grandmother testified that she throws away his lunch every day from school because he does not eat it.   Tr.

74.  She further testified she must dress him for school by wrestling with him and sometimes put him in the shower because he will not bathe on his own.   Tr. 79–81.

Ms. Anderson's ratings also may have changed as to his ability to respond to changes in his mood and use coping skills to meet the daily demands of the school environment.   She already observed in her questionnaire that M.H.M. had obvious problems in these areas, and her letter describes M.H.M.'s response to reprimand or redirection as often falling onto the floor in the fetal position.   Tr. 373, 502.   Because the ALJ cited and relied upon Ms. Anderson's questionnaire to determine the degree of M.H.M.'s limitation in his ability to care for himself, the failure to resolve the discrepancies between the questionnaire and the letter leaves the Court unable to determine whether substantial evidence supports her decision.   *Ellington ex rel. C.K.S.*, 927 F. Supp. 2d at 1272   ("In order to fulfill his obligations, the ALJ must, at the very least, resolve the inconsistencies in the evidence, rather than selectively choosing items to support his decision.").

But Plaintiff must establish M.H.M. has marked limitations in *two* domains or an extreme limitation in one domain to establish M.H.M. is disabled.   *See Muhammad ex rel. T.I.M. v. Comm'r of Soc. Sec.*, 395 F. App'x 593, 601–02 (11th Cir. 2010) ("Even if T.I.M.'s limitations in this domain were marked, he still would not be disabled because he did not have marked limitations in at least one additional domain.").   Plaintiff argues Ms. Anderson's December letter also supports a greater limitation as to M.H.M.'s ability to interact with others, citing an incident in November involving an altercation with another student after which M.H.M. was

suspended.   Doc. 21 at 17.   The ALJ appears to have addressed the incident, citing

the report of school psychologist Rebecca Marazon, MS, CAS.   Tr. 41.   She

explained:

> [M.H.M.] was previously suspended twice for kicking another student,
> putting his hands around another student's neck and squeezing, and
> shoving a student. However, since that time [M.H.M.] has not had
> disciplinary trouble at school. [M.H.M.'s] grandmother testified he gets
> along with her and her sister most of the time. She further testified he
> is on a bowling league. [M.H.M.'s] teacher documented [he] can work
> independently as well as in a group, and he is good at leading the group
> to get a task accomplished. [M.H.M.] testified he has friends at school.
> Dr. Carver testified [M.H.M.] plays video games and does things that
> are age appropriate. [M.H.M.'s] grandmother testified [he] was enrolled
> in football, but he did not like it. [M.H.M] has a less than marked
> limitation in this domain.

Tr. 41.   In this analysis, the ALJ again cites to Ms. Anderson's questionnaire—in

this instance to her comment as to the attending and completing task domain that

M.H.M. can work independently as well as in a group.   Tr. 41 (citing Tr. 499).

The ALJ makes no mention, however, of the discrepancy between Ms.

Anderson's selection of no problems observed in any of the functions in the domain of

interacting and relating with others in the questionnaire completed in September

2013 and Ms. Anderson's statements in the letter completed three months later that

M.H.M. gets aggravated easily and becomes aggressive with other students in the

class.   Tr. 373, 500.   The ALJ also does not address Ms. Anderson's statement about

M.H.M.'s response to any redirection or reprimand—to fall on the floor in the fetal

position requiring coaching to get him to stand up.   Tr. 373.   The interacting and

relating with others domain involves how well a claimant can "initiate and sustain

emotional connections with others, develop and use the language of [the claimant's]

community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 926a(i).   The December letter would therefore seem to pertain directly to M.H.M.'s ability to interact and relate with others.   Although the ALJ ultimately may reach the same conclusions upon remand, based on the current record the Court cannot discern how the ALJ weighed the December letter, if at all, as to the domain of interacting and relating with others.   Therefore, the Court recommends the decision be reversed as to this issue and remanded for the ALJ to consider the December 2013 letter and revaluate M.H.M.'s limitations in these domains.

### b.  Weighing medical source opinions

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 416.927(e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).   "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treating relationship and the nature and

extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)-(6). Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 416.927(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004). Further, the ultimate opinions as to whether a claimant is disabled or the severity of a claimant's impairments are exclusively reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1)-(2); SSR 96-6p, 1996 WL 374180.

### i. *Dr. Christine Needham*

Christine Needham, Ed.D, examined and evaluated M.H.M. on January 26, 2016, and prepared a five-page report of her findings. Tr. 633–637. She also completed medical forms to evaluate M.H.M. for listings 112.11, 112.06, 112.04 and 112.08, and she submitted a functional evaluation. Tr. 638–49. The ALJ summarized Dr. Needham's findings:

> The opinion of Dr. Needham from January 26, 2016 was considered. Dr. Needham completed forms which state [M.H.M.] has medically

documented findings of marked inattention, impulsiveness, and hyperactivity. Dr. Needham determined [M.H.M.] had depressed or irritable mood; markedly diminished interest or pleasure in almost all activities; appetite or weight increase or decrease; psychomotor agitation or retardation; and difficulty thinking or concentrating. She concluded [M.H.M.] had seclusiveness or autistic thinking; pathologically inappropriate suspiciousness or hostility; oddities of thought, perception, speech and behavior; persistent disturbances of mood or affect; pathological dependence, passivity, or aggressiveness; intense and unstable interpersonal relationships and impulsive and exploitative behavior; and pathological perfectionism and inflexibility. Additionally, she concluded [M.H.M.] had marked impairment in cognitive/communicative functioning, social functioning, personal/behavioral functioning, or concentration persistence, or pace. Dr. Needham concluded [M.H.M.] has excessive anxiety manifested when [he] is separated from a parent; excessive and persistent avoidance of strangers; and persistent unrealistic or excessive anxiety and worry. Conclusions made by Dr. Needham include that [M.H.M.] has extreme limitation in cognitive/communicative function, motor function, and personal function. Furthermore, she concluded [M.H.M.] has marked limitation in motor function and concentration, persistence, or pace.

Tr. 24; *see also* Tr. 35–36 (repeating summary). The ALJ gave Dr. Needham's opinion no weight, reasoning she saw M.H.M. one time, and her opinion conflicts with the longitudinal medical evidence of record. Tr. 36.

Plaintiff argues the ALJ erred in rejecting Dr. Needham's opinion in favor of Dr. Carver's opinion, where the former was based on an examination of M.H.M. and is supported by substantial evidence, and the latter was neither. Doc. 21 at 24. Specifically, Plaintiff argues Dr. Needham's opinion is supported by evidence from M.H.M.'s grandmother, Ms. Anderson, Ms. Marazon and Dr. Needham's own report, reflecting M.H.M. is sad, sullen and showing signs of clinical depression. *Id.* at 21–24. Yet, Plaintiff argues, the ALJ improperly relied on treatment notes from October 2013, describing Plaintiff as always happy and laughing on the medication

Wellbutrin, and from October 2015, documenting M.H.M. was no long having "anger fits" on the medication Depakote.   *Id.* at 21–22.

The Commissioner responds the ALJ was not required to give Dr. Needham's report controlling weight because the opinions of a consultative examiner are not entitled to special deference.   *Id.* at 24.   She further argues that Dr. Needham's report was not supported by the record and was inconsistent with a record as a whole. *Id.* at 25.   Specifically, Dr. Needham diagnosed M.H.M. with autism after the hearing despite no other professional coming to the same conclusion in over four years of treatment.   *Id.*   The Commissioner also argues M.H.M. had been improving on medication, with his cognitive function as intact.   *Id.*   The Commissioner further notes Dr. Needham's report conflicts with the report of Kenneth A. Visser, Ph.D., who conducted a psychological consultative evaluation, and found no marked limitations. *Id.* at 26.   The Commissioner contends the ALJ also properly relied on the testimony of Dr. Carver even though he did not examine M.H.M. because he provided detailed discussion of M.H.M.'s limitations at the hearing.   *Id.* at 26–28.

The Court recommends the ALJ properly weighed Dr. Needham's opinion and substantial evidence supports her decision to reject it.   Initially, as the ALJ noted, Dr. Needham did not establish a treating relationship with Plaintiff because she saw Plaintiff only once.   Tr. 36.   The Eleventh Circuit has found that a doctor who examines a patient on only one occasion is neither considered a "treating physician" nor entitled to great weight.   *See Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).   Additionally, the ALJ properly rejected

the forms Dr. Needham completed, including the functional evaluation, because those "forms do not provide any persuasive details or persuasive specific references to [M.H.M.'s] symptoms that would persuasively support her opinion. Tr. 36. Form questionnaires, or so-called "checklist" opinions, such as those completed by Dr. Needham, generally are disfavored. *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).

Further, her opinion also conflicts with other evidence in the record. Of particular significance, the ALJ found that "[i]n over four years of treatment, no other medical professional came to the conclusions" Dr. Needham did. Tr. 36. Her statements regarding M.H.M.'s cognitive function being extremely limited conflict with a number of treatment records that his cognition was intact. Tr. 507, 560, 568, 652. M.H.M. was also observed to be responding to medications, although their dosage and frequency needed to be adjusted with medication management, such that his mood was observed to be happy and laughing rather than irritable and sad, and he was noted to be sleeping well. Tr. 477 (treating physician note, January 26, 2012: "No change in medication at this time, doing well in school. Happy to hear he is going to get involved with sports."), 505 (treatment note, October 16, 2013:

"wellbutrin did the trick—no longer irritable and sad[;] is always happy and laughing," medication response noted as good, previous report from November 13, 2012 from Plaintiff that "it seems the medication has helped because [M.H.M.] is now doing 'good in school'"), 550 (noting medication response on April 23, 2015 was good), 558 (noting on June 10, 2015 M.H.M laughs and is a different child with addition of Depakote); 566 (noting report that since starting Depakote, M.H.M. no longer has "anger fits").[5]

The ALJ also partially relied on Dr. Visser's psychological evaluation, which was consistent with the above record evidence and supports discounting Dr. Needham's opinion.   Tr. 36, 491–96.   Dr Visser did not identify any marked limitations; found M.H.M. had fair mathematical skills, very good comprehension, and reading within the average range; was able to concentrate during the evaluation and had no problems with persistence.   Tr. 36, 492–94.   This was consistent with M.H.M.'s testing.[6]   Tr. 36, 534–35.   Dr. Visser also found that M.H.M. was in touch with reality.   Tr. 492.

Although the ALJ also relied on the testimony of Dr. Carver at the hearing and

---

[5] Dr. Needham also noted M.H.M. did not play with or near any peers, yet he and his grandmother testified that he interacts with other children—his best friend, his younger sister and his bowling league.   Tr. 64–66, 76–77, 636.   There is a conflict in the record, however, as discussed above regarding M.H.M.'s ability to interact with others because Ms. Anderson's December letter suggests M.H.M. was aggressive with other children.   Tr. 373. On remand, the Court recommends the ALJ should resolve this conflict and reevaluate as appropriate the opinion evidence.

[6] The Court notes that Dr. Visser's examination was on July 31, 2013, which was significantly earlier than Dr. Needham's examination.   Tr. 491, 633.   Despite this gap in time, the ALJ's review of M.H.M.'s longitudinal medical history discussed above supports the ALJ's decision to rely on Dr. Visser's examination and discount Dr. Needham's based on consistency with the record.   Tr. 36.

found that this testimony was consistent with the record evidence, the record reflects some inconsistencies the ALJ should have resolved prior to relying on his testimony to discount Dr. Needham's opinion.   For example, Dr. Carver testified that although M.H.M. was suspended for violence with another student, it was a one-day suspension, and M.H.M. has not exhibited a pattern of such behavior.   Tr. 87.   Yet Ms. Anderson's December letter indicates that he gets aggravated and becomes aggressive with other students.   Tr. 373.   M.H.M.'s grandmother also testified he is at a special school for children with A.D.H.D. and does not get disciplined there although he got angry at another child on the playground and rips papers up in class. Tr. 75–76.   Because the Court recommends reversal as to the evaluation of evidence from Ms. Anderson, the Court recommends the Commissioner be directed to reevaluate as appropriate the consistency of the opinion evidence as to M.H.M.'s limitations in light of Ms. Anderson's observations.

### ii.   Rebecca Marazon's opinions

Although the ALJ is required to state the weight given to medical opinions, failure to do so is harmless if it did not affect the ALJ's ultimate determination. *Hunter*, 609 F. App'x at 558 (citing *Dyer*, 395 F.3d at 1211).   The Eleventh Circuit has held that the court has no rigid requirement, "the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole."   *Dyer*, 395 F.3d at 1211 (alteration in original) (internal quotation marks and citation omitted).   The

Eleventh Circuit has explained that the question before the court is whether substantial evidence in the record supports the ALJ's opinion as a whole. *Id.* (citation omitted).   As a result, even if the ALJ commits an error, the error is harmless if it did not affect the ALJ's ultimate determination. *Hunter*, 609 F. App'x at 558.

Plaintiff argues the ALJ did not specify the weight given to the opinion of nationally certified school psychologist Rebecca Marazon although Ms. Marazon found M.H.M. exhibited non-compliant behaviors 60 percent of the time, which suggest marked limitations in completing and attending tasks, interacting and relating with others, and taking care of himself. Doc. 21 at 28–29.   Plaintiff further argues the social, emotional and behavioral issues Ms. Marazon observed significantly impacted [M.H.M.'s] academic performance and ability to maintain positive relationships. *Id.* at 29 (citing Tr. 545).   The Commissioner responds Ms. Marazon's opinion is not entitled to any deference, and the ALJ need not refer to every piece of evidence as long as her decision is not a broad rejection of the claimant's medical condition as a whole. *Id.*   The Commissioner further argues the ALJ expressly relied on Ms. Marazon's report in evaluating M.H.M.'s subjective complaints and determining whether his impairments met or equaled a listing. *Id.* at 29–30.

The ALJ did not state with particularity the weight given to Ms. Marazon's opinion.   On May 9, 2014, M.H.M. saw Ms. Marazon for testing because he had academic underachievement in math and social/emotional difficulties.   Tr. 534.

After obtaining a thorough family background/developmental history and school history, Ms. Marazon conducted a functional behavioral assessment and developed a behavior intervention plan.   Tr. 534–45.   She opined that current interventions were not working to increase M.H.M.'s use of coping strategies independently without adult supervision.   Tr. 539–40.   Based on an interview with Ms. Anderson, Ms. Marazon noted M.H.M. exhibited non-compliant behaviors 60 percent of the time when he was asked to do something.   Tr. 537.   Ms. Marazon observed M.H.M. while in class and observed some frustration, distraction, and fidgeting.   Tr. 540. The ALJ relied on Ms. Marazon's report in finding that M.H.M. had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating to others.   Tr. 39–41.

Because the Court recommends reversal as to the ALJ's evaluation of Ms. Anderson's statements, and Ms. Marazon's findings are relevant to assessing M.H.M.'s limitations in his ability to interact with others, it recommends the ALJ reevaluate Ms. Marazon's opinion as well.

## V.   Conclusion

The Court recommends the ALJ erred in failing to sufficiently consider the evidence from M.H.M.'s teacher, Ms. Anderson.   In the absence of discernable consideration of this probative evidence, the Court cannot determine whether substantial evidence supports the decision.   Therefore, the Court recommends reversal and remand.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.      The decision of the Commissioner be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

> a.  Fully consider all of the evidence from Kellee Anderson and resolve any conflicts therein;
>
> b.  Reevaluate as appropriate the evidence from Rebecca Marazon, MS, CAS, and Christine Needham, Ed.D.; and
>
> c.  Make any other determinations consistent with this Report and Recommendation, or in the interests of justice.

2.      The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(b) in favor of Jennifer Whaley, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 1st day of August, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record